# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| LARRY T. OUTLAW, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Cause No. 3:09-CV-99 JVB |
| WILLIAM K. WILSON, *et al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Larry T. Outlaw, a prisoner confined at the Wabash Valley Correctional Facility, filed a complaint in the LaPorte Superior Court, pursuant to 42 U.S.C. § 1983, alleging that a correctional officer was deliberately indifferent to a diabetic reaction he had while he was housed at the Westville Control Unit. The defendants removed the complaint to this court. Pursuant to 28 U.S.C. § 1915A(a), the court shall review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Because Outlaw is a prisoner as defined in § 1915A(c) and the defendants he seeks redress from are governmental officials, § 1915A requires the court to screen his complaint, even though he originally filed it in state court.

Section 1915A(a) requires the court to review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

Outlaw alleges that the defendants were deliberately indifferent to a diabetic attack he

suffered on January 13, 2007. He names eleven defendants in his complaint: six medical professionals and five non-medical staff. According to the complaint, Outlaw has been diagnosed as a chronic diabetic patient. He alleges that at 8:45 a.m. on January 13, 2007, while he was in the recreation yard, he "start[ed] experiencing a diabetic reaction that needed immediate medical attention." (Compl. at 3). He states that he and other inmates tried to contact the control pod officer, Officer Sipich "who was stretched out on the D-Pod's counter ledge sound asleep." (Compl. at 4). Outlaw alleges that other inmates finally woke Officer Sipich at about 8:55 a.m., and that:

> Officer Sipich raised-up, glanced around the unit, adjusted sleeping positions and went straight back to sleep (even after acknowledging Plaintiff's medical situation and all the noise i.e. yelling, banging & kicking from other offenders.) Plaintiff had to continue to endure the pain & suffering while ofc. Sipich knowingly & intentionally ignore[d] Plaintiff's request for medical attention.

(Compl. at 5).

Outlaw asserts that at 9:32 a.m., Officer Armstrong came to the recreation yard to return him to his cell. Officer Armstrong recognized Outlaw's problem and said he would contact the medical staff. Outlaw further states that at 10:30 a.m. he called officer Armstrong to his cell and "hand-delivered a written statement that was detailing the entire incident surrounding when the Control Pod Officer was sound asleep and knowingly & intentionally ignored Plaintiff while having a sudden type of diabetic re-action and collapsing." (Compl. at 7). This suggests that the reaction was over before 10:30 a.m., allowing Outlaw to memorialize the incident in writing. Nurse Keefer came to Outlaw's cell to perform glucose testing, but did not take his "vitals." The next day, Nurse Gordon came to Outlaw's cell and stated that the medical staff was aware that he had a reaction the preceding day and that he would be scheduled to see Dr. Crawford.

Outlaw seeks injunctive and declaratory relief, as well as damages. But any injunctive relief

claims are moot because Outlaw is no longer housed at the Westville Control Unit. If a prisoner is released or transferred to another prison, "his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)). Outlaw is no longer confined at the Westville Control Unit, and his transfer to the Wabash Valley Correctional Facility before he filed his complaint renders his requests for injunctive relief against Westville officials moot. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990). A prisoner's transfer also renders his claims for declaratory relief moot. *Higgason*, 83 F.3d at 811 (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)) (applying the capable-of-repetition doctrine without discrimination between claims for declaratory relief and claims for injunctive relief).

It is possible that Outlaw could be transferred back to the Westville Control Unit, since an inmate can be relocated at any time. *See Sandin v. Conner*, 515 U.S. 472 (1995). But the mere possibility of re-transfer is insufficient. The standard to be applied here is whether he is "likely to be retransferred." There is no reasonable basis here that is "likely to be retransferred" to the Westville Control Unit.

Outlaw seeks relief against the defendants in their official and individual capacities. But the Eleventh Amendment precludes an action against individual state officials for damages in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985). Accordingly, Outlaw may only obtain damages from the defendants in their individual capacities.

Outlaw brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City*

*of Matoon*, 378 F.3d 642 (7th Cir. 2004). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

The plaintiff asserts that he seeks "to remedy the deprivation . . . of rights guaranteed by the Eighth (8th) and Fourteenth (14th) Amendments to the U.S. Constitution." (Compl. at 12). When addressing claims brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by defendants. *Graham v. Conner*, 490 U.S. 386, 394, (1989). The Eighth Amendment protects convicted prisoners from cruel and unusual punishment while the rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Because the plaintiff was a convicted felon at the time the incident he complains of occurred, the court will consider his claims under the Eighth Amendment.

A violation of the Eighth Amendment's cruel and unusual punishment clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (citations

omitted). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Estelle*, 429 U.S. at 106; *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" for Eighth Amendment purposes if it is either one that a physician has diagnosed as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez*, 111 F.3d at 1373.

Diabetes may constitute a serious medical need, *see Spencer v. Sheahan*, 158 F.Supp.2d 837 (N.D. Ill. 2001), and for the purposes of this memorandum, the court will assume that Outlaw's diabetes and the reaction he claims he suffered on January 13, 2007, constitutes a serious medical need. The centerpiece of Outlaw's claim is that Officer Sipich fell asleep while he was supposed to be monitoring the recreation yard. A correctional officer falling asleep on the job is negligence, not deliberate indifference, and negligence states no claim upon which relief can be granted under § 1983.

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

5

*Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted).

But here Outlaw alleges that other inmates woke Officer Sipich up, but that he simply went back to sleep even though he was aware that Outlaw was having a medical problem, leaving Outlaw suffering in pain. A reasonable factfinder might conclude that this conduct went beyond mere negligence. Accordingly, giving the plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, his allegations against Officer Sipich are sufficient to state an Eighth Amendment medical claim upon which relief can be granted under § 1983 under the standards of *Estelle*.

Outlaw also names Officer Armstrong as a defendant. Armstrong was the officer who delivered Outlaw to the recreation yard, but he did not remain on the pod and was not responsible for monitoring Outlaw during recreation. When he came to the yard to escort Outlaw back to his cell after recreation, Armstrong saw that Outlaw was having a problem and notified the medical staff, who sent a nurse to his cell. These facts to not suggest that Officer Armstrong was deliberately indifferent to Outlaw's medical needs.

> Perhaps it would be a different matter if [the defendant] had ignored [the plaintiff's] complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns.

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005).

Outlaw also names several supervisory staff members, including Superintendent William Wilson, Custody Captain J. Shreves, and Shift Supervisor Lieutenant Burkett as defendants. It is well established that a prisoner in a § 1983 case may not recover damages from officials solely because of their supervisory positions under the theory of *respondeat superior*. *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir.1996). In order to be liable for damages, an individual must

have personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir.2000); *see also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001) (to be liable for the deprivation of a constitutional right, an official must personally participate in the deprivation or must direct the conduct or have knowledge of and consent to the conduct).

Outlaw does not assert that any of these officials were present when he was having his diabetic reaction or that they were aware of the problem when it was happening. He does allege that he spoke to Lt. Burkett and Cpt. Shreves later in the day, and that they admitted that they were aware of earlier complaints of Officer Sipich sleeping on duty. But even if they may have known that Officer Sipich had a problem staying awake, that does not make them personally involved in this particular incident or liable for damages for Officer Sipich's conduct.

Finally, Outlaw names several medical staff members, including Health Care Administrator C. Morrow, Dr. Crawford, and Nurses B. Brubaker, C. Wingo, P. Keefer, and A. Gordon as defendants. He does not mention most of these defendants in the body of his complaint or state how they were deliberately indifferent to his medical needs. The complaint establishes that when notified that Outlaw had a problem on January 13, 2007, the medical department dispatched Nurse Keefer to his cell. Nurse Keefer observed Outlaw and performed glucose testing. The fact that she may not have checked Outlaw's "vital signs" states no claim upon which relief can be granted. Outlaw does not allege that he was still in distress when she came to his cell and before 10:30 a.m. he was sufficiently recovered from the incident to have started writing complaints about the event. If there was no apparent need to check Outlaw's "vital signs" when Nurse Keefer was at his cell, her decision not to do so does not suggest deliberate indifference to his medical needs. Moreover, Outlaw does not assert any actual injury from Nurse Keefer's decision not to check his vitals. The

7

next day, according to the complaint, Nurse Gordon came to Outlaw's cell and stated that the medical staff was aware that he had a diabetic reaction the preceding day and that he would be scheduled to see Dr. Crawford. Nothing in the complaint suggests that any of the medical defendants was deliberately indifferent to Outlaw's medical condition on or immediatly after January 13, 2007.

For the foregoing reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against defendant Sipich in his personal capacity for damages on his Eighth Amendment claim that defendant Sipich was deliberately indifferent to his serious medical needs between 8:45 a.m. and 9:32 a.m. on January 13, 2007; and

(2) **DISMISSES** all other defendants and all other claims presented in the complaint pursuant to 28 U.S.C. § 1915A(b)(1).

SO ORDERED on May 22, 2009.

s/Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
HAMMOND DIVISION
